# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| SHUXIN FU<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>Defendants. | Civil Action No. 1:24-cv-00592<br><br>JURY TRIAL DEMANDED |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY, AND FOR ALTERNATIVE SERVICE BY PLAINTIFF

Plaintiff Fu Shuxin ("Plaintiff") has filed this design patent infringement action against the defendants identified on Schedule A to the Complaint ("Defendants") based on Defendants' (i) sale of products that embody a design that infringes Plaintiff' U.S. Patent No. D982,080 (the "D'080 patent"). Plaintiff submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction and a temporary asset restraint, expedited discovery, and alternative service (the "*Ex Parte* Motion").

I

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT…………………………..1

II.     STATEMENT OF FACTS……………………….…………………………………1

      A.     Plaintiff's  Products and Patented Design…………………………………..1

      B.     Defendants' Unlawful Activities……………………………………………2

      C.     Jurisdiction..…………………………………………………………………3

III.    ARGUMENT………………………………………..……………………………3

      A.     Legal Standard Governing Requests for a Temporary Restraining Order………..4

      B.     Plaintiff Will Likely Succeed on the Merits. ……………………………..5

      C.     There Is No Adequate Remedy at Law, and Plaintiff Will Suffer
Irreparable Harm in the Absence of Preliminary and Emergency Relief………...7

      D.     The Balance of Harms Weighs in Plaintiff's Favor, and the Public
Interest Is Served by Entry of an Injunction……………………………...…9

IV.    THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ….………………….……10

      A.     Preventing the Fraudulent Transfer of Assets Is Appropriate……..………….11

      B.     Plaintiff is Entitled to Expedited Discovery……………….…………………13

      C.     Service of Process by Email is Warranted in this Case…………….…………14

      D.     A Bond Should Secure the Injunctive Relief…… …………………...………16

V.     CONCLUSION…………………………………….…………………………...…17

# TABLE OF AUTHORITIES

**Cases**

*MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*,
No. 1:08-cv-02593, 2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008)……………………………..5

*Popular Enters., LLC v. Webcom Media Group, Inc.*,
225 F.R.D. 560, 563 (E.D. Tenn. 2004)……………………………………………………………16

*Juniper Networks, Inc. v. Bahattab*,
No. 1:07-cv- 01771-PLF-AK, 2008 WL 250584, *1-2, (D.D.C. Jan. 30,
2008)……………………………………………………………………….............................16

*Rathmann Grp. v. Tanenbaum*,
889 F.2d 787, 789 (8th Cir. 1989)……………………………………………………..………16

*Deckers Outdoor Corporation v. The Partnerships, et al.*,
No. 15-cv-3249 (N.D. Ill. April 4, 2015)
…………………………………………………………………………………...11

*Christian Dior Couture, S.A. v. Lei Liu et al.*,
2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015)………………….....................3

*Monster Energy Co. v. Zheng Peng*,
Case No. 17-cv-414, 2017 WL 47732769, at *7 (N.D. Ill. Oct. 23,
2017)…………………………………………………………………………….………….3

*Columbia Pictures Indus., Inc. v. Jasso*,
927 F. Supp. 1075, 1077 (N.D. Ill. 1996)……………………………………………………3

*Promatek Indus., Ltd. v. Equitrac Corp.*,
300 F.3d 808, 811 (7th Cir. 2002)………………………………………………………...4

*Abbott Labs. v. Mead Johnson & Co.*,
971 F.2d 6, 11 (7th Cir. 1992)………………………………………………………………5

*KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*,
997 F.2d 1444, 1450 (Fed. Cir. 1993)………………………………………………………5

*Amini Innovation Corp. v. Anthony California, Inc.*,
211 F. App'x 988, 2007 WL 43262………………………………………………………5

*Oakley, Inc. v. Int'l Tropic–Cal, Inc.*,
923 F.2d 167, 169 (Fed. Cir. 1991)…………………………………………………………...5

*L.A. Gear, Inc. v. Thom McAn Shoe Co.,*
988 F.2d 1117, 1127 (Fed. Cir. 1993) ……………………………………………………………6

*Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.,*
134 F.3d 1085, 1088 (Fed. Cir. 1998). …………………………………………….......7

*Robert Bosch LLC v. Pylon Manufacturing Corp.,*
659 F.3d 1142, 1148 (Fed. Cir. 2011) ………………………………………………………7

*Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.,*
814 F.3d 1343, 1352 (Fed. Cir. 2016) ………………………………………………………7

*Aria Diagnostics, Inc. v. Sequenom, Inc.,*
726 F.3d 1296, 1304 (Fed. Cir. 2013) ……………………………………………………… 7

*Otter Prods. v. Anke Group Indus. Ltd.,*
2:13-cv- 00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) ………………………………8

*Nike, Inc. v. Fujian Bestwinn Industry Co., Ltd.,*
166 F.Supp.3d 1177, 1178-79 (D. Nev. 2016) ………………………………………………8

*Reebok Int'l Ltd. v. J. Baker, Inc.,* 32 F.3d 1552, 1558 (Fed. Cir. 1994) ………………………..8

*Tuf-Tite, Inc. v. Fed. Package Networks, Inc.,* No. 14-cv-2060, 2014 WL 6613116, at *8 (N.D. Ill. Nov. 21, 2014) ………………………………………………………………………...8

*Apple Inc. v. Samsung Elecs. Co.,*
735 F.3d 1352, 1080 (Fed. Cir. 2013) ………………………………………………………8

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,*
No. 2:04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007)…………………………9

*Virtual Studios, Inc. v. Beaulieu Grp.,*
*LLC,* 987 F. Supp. 2d 769, 781 (E.D. Tenn. 2013) ……………………………………………...9

*True Religion Apparel, Inc. v. Does 1-10*0,
No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (Coleman, J.) ………………………………………..10

*CSC Holdings, Inc. v. Redisi,*
309 F.3d 988, 996 (7th Cir. 2002) …………………………………………………….....11

*Animale Grp. Inc. v. Sunny's Perfume Inc.,*
256 F. App'x 707, 709 (5th Cir. 2007) …………………………………………………...12

*Lorillard Tobacco Co. v. Montrose Wholesale Candies,*
2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005) …………………………………………..12

IV

*Grupo Mexicano, de Desarollo, S.A. v. Aliance Bond Fund*,
527 U.S. 308, 325 (1999) …………………………………………………………………………..12

**Statutes**

35 U.S.C. § 101……………………………………………………………………………………3

28 U.S.C. §1338(a) …………………………………………………………………………………3

28 U.S.C. § 1391……………………………………………………………………………………..3

28 U.S.C. §1331……………………………………………………………………………………...3

35 U.S.C. § 289……………………………………………………………………………………12

Fed. R. Civ. Rule 65(b) ……………………………………………………………………………...3

Fed. R. Civ. P. 26(b)(1) …………………………………………………………………………13

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff is requesting temporary *ex parte* relief based on an action asserting design patent infringement.  As alleged in Plaintiff's Complaint, Defendants are, *inter alia*, marketing and distributing unauthorized and unlicensed products, specifically a mesh desk organizer, with the exact design as that represented in the D'080 Patent—the Infringing Products embody designs that infringe Plaintiff's D'080 Patent.  Defendants have engaged in this unlawful conduct through various fully interactive, commercial internet stores operating under at least the Online Marketplace Accounts listed in Schedule A to the Complaint (collectively, the "Defendant Internet Stores").

Each Defendant in this action runs a sophisticated operation and reaches out to do business with U.S. residents, including Illinois residents specifically, by operating one or more commercial, interactive Defendant Internet Stores, through which such residents can purchase Infringing Products.  The Defendant Internet Stores share unique identifiers establishing a logical relationship between them.  Further, Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their operation. Plaintiff is forced to file this action to combat Defendants' continued willful infringement of the D'080 Patent, as well as to protect unknowing consumers from purchasing the Infringing Products over the Internet.  Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue *ex parte* a Temporary Restraining Order.

## II.     STATEMENT OF FACTS

### A.  Plaintiff's  Products and Patented Design

Plaintiff designs, manufactures, sells, and distributes the mesh desk organizer. (Declaration of Fu Shuxin ("Shuxin Decl.") ¶ 3).  Plaintiff has generated a large amount of

revenue from sales of its lid through on-line retail chains such as Amazon and others.

**B.    Defendants' Unlawful Activities**

The marketplace success of Plaintiff's Products has resulted in significant infringement of Plaintiff's Products.  (Shuxin Decl. ¶ 8).  Consequently, Plaintiff maintains an anti-infringement program and investigates suspicious e-commerce stores identified in proactive Internet sweeps. (*Id*. ¶ 8).   Plaintiff has identified numerous fully interactive e-commerce stores, including those operating the Defendant Internet Stores, which are offering for sale and selling Infringing Products to consumers in this Judicial District and throughout the United States.  (*Id*. ¶ 8 and Ex. 1).   Additionally, Infringing Products for sale by the Defendant Internet Stores bear similar irregularities indicia of being related to one another—suggesting that the Infringing Products were manufactured by and come from common sources and that Defendants are interrelated.  Id.  In fact, Defendants are all selling the exact same product, which is virtually identical to the asserted design.

**Jurisdiction**

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Patent Act, 35 U.S.C. § 101 *et seq.*, and 28 U.S.C. §§ 1338(a) and 1331. Venue is proper pursuant to 28 U.S.C. § 1391. This Court may properly exercise personal jurisdiction over Defendants because Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive Defendant Internet Stores.  Specifically, Defendants have targeted sales to U.S. residents by setting up and operating e-commerce stores using one or more seller aliases, which stores target U.S. consumers and through which Illinois residents can purchase the Infringing Products. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu et al*., 2015 U.S. Dist. LEXIS 158225, at *6

(N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendant offering to sell allegedly infringing product to U.S. residents located in Illinois; no actual sale required); *see also Monster Energy Co. v. Zheng Peng*, Case No. 17-cv-414, 2017 WL 47732769, at *7 (N.D. Ill. Oct. 23, 2017). Each of the Defendants is engaging in interstate commerce, committing tortious acts in the U.S., including in Illinois specifically, and has wrongfully caused Plaintiff substantial injury in the U.S., including the State of Illinois.

## III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill symbolized by the success of the D'080 design, as evidenced by the success of the mesh desk organizer. Fed. R. Civ. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. The entry of a TRO is necessary here in order to immediately stop Defendants from benefiting from their wrongful use of the D'080 Patent, and to preserve the status quo until a hearing can be held.

In the absence of an *ex parte* TRO issued without notice, Defendants can and likely will register new e-commerce stores under new aliases and move assets to offshore bank accounts outside the jurisdiction of this Court, specifically in China. Courts have recognized that civil actions against willful patent design infringers present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* TRO.

3

### A.    Legal Standard Governing Requests for a Temporary Restraining Order

A party seeking a TRO must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002). Courts in this District have held that "proceedings against those who deliberately traffic in infringing merchandise are often rendered useless if notice is given to the infringers before temporary injunctive and impoundment relief can be granted" *Columbia Pictures Indus v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.* at 12.

### B.    Plaintiff Will Likely Succeed on the Merits.

"A design patent protects the non-functional aspects of an ornamental design as seen as a whole and as shown in the patent." *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993). Design patent infringement analysis is governed by the "ordinary observer" test, which has been articulated as follows: "[If] in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the

same, if the resemblance is such as to deceive an ordinary observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Amini Innovation Corp. v. Anthony California, Inc.*, 211 F. App'x 988, 2007 WL 43262, at **2 (Fed. Cir. Jan. 8, 2007).

Further, design patent infringement requires that the accused design misappropriate the novel ornamental features of the patented design that distinguish it from the prior art. *Oakley, Inc. v. Int'l Tropic–Cal, Inc.,* 923 F.2d 167, 169 (Fed. Cir. 1991).

Defendants make, use, sell, offer for sale, and/or import into the United States products that infringe the D'080 Patent. In the eye of an ordinary observer, the design of Defendants' Infringing Products and the design claimed in the D'080 patent are substantially the same; indeed, they are virtually identical. A comparison between the design claimed in the D'080 patent on the one hand - a mesh desk organizer—and the Infringing Products on the other hand, is provided below.

| **D'080 Patent** | **Representative Depiction of Defendants' Infringing Products** |
|---|---|
|  '080 Patent, Fig. 1 | *See* Exhibit 1 of Complaint |



| Fig. 5 | See Exhibit 1 |
| Fig. 1 | See Exhibit 1 |

There are a great variety of desk organizers designs on the market, only some of which are shown below, yet Defendants have willfully copied Plaintiff's exact design. [1]

[1] https://www.amazon.com/Simple-Trending-Organizer-Vertical-Document/dp/B07R7FZ6RG/ref=sr_1_6?crid=1BAU8PZFO6J73&keywords=desk%2Borganizer&qid=1706027932&sprefix=desk%2Borgznier%2Caps%2C96&sr=8-6&th=1



The sameness reflected above deceives prospective purchasers and induces them to purchase Defendants' products supposing them to have come from Plaintiff. Defendants' Infringing Products misappropriate the novelty of the design claimed in the D'080 patent that distinguished Plaintiff's patented design from the prior art. Defendants sell, offer for sale, and/or import into the United States for subsequent sale or use products that infringe directly and/or indirectly the ornamental design claimed in the D'080 patent.

The striking similarity between the design claimed in the D'080 Patent and Defendants' Infringing Products demonstrate not only Plaintiff' substantial likelihood of success on the merits, but also that Defendants have willfully copied Plaintiff's designs. *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1127 (Fed. Cir. 1993) (copying is strong evidence of willful infringement). Thus, Plaintiff has a strong likelihood of proving that Defendants have infringed the D'080 Patent. Accordingly, Plaintiff is likely to establish a *prima facie* case of design infringement.

Further, the D'080 Patent is likely to withstand any validity challenges. The D'080 Patent is presumed valid. *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998). This presumption applies at every stage of litigation. *Canon Computer Sys.*, 134 F.3d at 1088. No party has to date challenged the validity of the D'080 Patent,

further supporting that Plaintiff has a high likelihood of success on the merits here. *Id.* (if "the [alleged infringer] fails to identify any persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's burden on the validity issue.").

  **C.**  **There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary and Emergency Relief.**

  In the context of infringement of a design patent, irreparable harm occurs when the "remedies available at law, such as monetary damages, are inadequate to compensate for [that] injury." *Robert Bosch LLC v. Pylon Manufacturing Corp.,* 659 F.3d 1142, 1148 (Fed. Cir. 2011). A plaintiff need not only show that an irreparable harm is likely in order for an injunction to issue. *See, e.g., Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In this case, in the absence of an injunction, Plaintiff will suffer irreparable harm due to loss of goodwill and reputation. Li Declaration at ¶¶ 14-19. Such injury is grounds for an injunction to issue. *See, e.g., Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("Under [the Court of Appeals for the Federal Circuit's] precedent, price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.") (internal quotes and cites omitted); s*ee also Otter Prods. v. Anke Group Indus. Ltd.*, 2:13-cv-00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) (Holding TRO was necessary to prevent "irreparable injury…in the form of (a) loss of control over its intellectual property rights; (b) loss of consumer goodwill; and (c) interference with [plaintiff's] ability to exploit the OTTERBOX trademarks and design patents."); *see also Nike, Inc. v. Fujian Bestwinn Industry Co., Ltd.*, 166 F.Supp.3d 1177, 1178-79 (D. Nev. 2016) ("Absent an *ex parte* temporary restraining order and seizure order, Bestwinn's importation, sale, and/or offers to sell its Flyknit Design Infringements will result in immediate and irreparable injury to NIKE in the form of loss of control over its

valuable intellectual property rights, loss of consumer goodwill, and interference with NIKE's ability to exploit the Flyknit Design Patents.").

In the absence of an injunction, Defendants' infringement of the D'080 Patent is likely to continue to cause consumer confusion with Plaintiff's products, resulting in harm to Plaintiff's reputation and loss of associated goodwill. Shuxin Decl. at ¶¶ 15-19. As established by the Federal Circuit: "[h]arm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure." *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994); *see also Tuf-Tite, Inc. v. Fed. Package Networks, Inc.*, No. 14-cv-2060, 2014 WL 6613116, at *8 (N.D. Ill. Nov. 21, 2014) (quoting and relying on *Reebok* in finding irreparable harm).

A causal nexus exists between Defendants' infringement and each of the irreparable harms that Plaintiff is suffering. *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1080 (Fed. Cir. 2013). Here, Defendants' infringing use of the D'080 Patent in the Infringing Product is a substantial, if not the exclusive, reason for consumer demand of the Infringing Products. *See PCT Int'l Inc. v. Holland Elecs. LLC*, No. CV-12-01797-PHX-JAT, 2015 WL 5210628, at *23-24 (D. Ariz. Sept. 8, 2015), *aff'd*, No. 2016-1061, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016) ("The Federal Circuit has explained that when the products at issue are "relatively simple," in the sense that they have a small number of features, the causal nexus requirement is easier to satisfy because the infringing feature has a large impact on demand for the products").

Given that Defendants are individuals and businesses who, upon information and belief, reside in the People's Republic of China with no real presence in the United States, any monetary judgment is likely uncollectable. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d

1142, 1156 (Fed. Cir. 2011) (reversing denial of permanent injunction where the likely availability of monetary damages was in question, citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007) where "'all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages'").

For the reasons stated above, Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* TRO is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Shuxin at ¶ 19.

**D.    The Balance of Harms Weighs in Plaintiff's Favor, and the Public Interest Is Served by Entry of an Injunction.**

As noted, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm, then it must next consider the harm that Defendants will suffer if preliminary relief is granted and balance such harm against the irreparable harm that Plaintiff will suffer if relief is denied. *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). The threat of continued patent infringement, without issuance of an injunction, as well as Plaintiff's loss of exclusivity occasioned by such infringement, support a finding that the balance of hardships weighs in favor of awarding injunctive relief. *Virtual Studios, Inc. v. Beaulieu Grp., LLC*, 987 F. Supp. 2d 769, 781 (E.D. Tenn. 2013).

Defendants have been profiting and continue to profit from the sale of Defendants' Infringing Products.  (Shuxin Decl. ¶ 13).  In so doing, Defendants have effectively eliminated the exclusivity that Plaintiff is entitled to under the Patent Act. (*Id*. ¶ 21).  Thus, the balance of hardships tips decisively in Plaintiff's favor here. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

10

## IV.     THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

In relief, Plaintiff seeks a temporary restraining order against Defendants, enjoining them from making, use, selling, or offering for sale the infringing products and another other products which infringe upon Plaintiff's patented design.  Furthermore, Plaintiff seeks a temporary asset freeze in order to ensure the availability of permanent relief given the likelihood that Defendants will simply transfer their assets in an attempt to evade any judgment against them entered by this Court.  First, counterfeiters regularly transfer funds out of reach of U.S. courts and plaintiffs once the receive notice of a lawsuit.  Shuxin Decl. at ¶¶ 10-13.  Second, these types of relief have been found wholly appropriate in similar cases by Courts in this District.  *See, e.g., Oakley, Inc. v. Does 1-100*, No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (Dow, J.) (granting *ex parte* application for temporary restraining order including the transfer of domain names, freezing of Defendants' financial accounts, and service of process by electronic publication and electronic mail); *True Religion Apparel, Inc.  v. Does 1-10*0, No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (Coleman, J.) (same); *Tory Burch LLC v. Zhong Feng, et al.*, No. 12-cv-9066 (N.D. Ill. Nov. 15, 2012) (Bucklo, J.) (same); *Coach, Inc., et al v. Does 1-100*, No. 12-cv-8963 (N.D. Ill. Nov. 15, 2012) (Bucklo, J.) (same); *Tory Burch LLC v. Does 1-100*, No. 12-cv-07163 (N.D. Ill. Sep. 14, 2012) (Lee, J.) (same); *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n*, No. 13 C 2167, 2013 U.S. Dist. LEXIS 47248, at *25-26 (N.D. Ill. Mar. 27, 2013) (same).

The freezing of assets "is also appropriate in this case because Defendants may otherwise transfer their financial assets to overseas accounts, thereby depriving the Plaintiff of final relief." *See Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) ("[B]ecause the Lanham Act authorizes the district court to grant [plaintiff] an accounting of

[defendant's] profits as a form of final equitable relief, the district court had the inherent power to freeze [the defendant's] assets in order to ensure the availability of that final relief."); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) ("A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief."); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("[S]ince the assets in question ... were profits of the [defendants] made by unlawfully stealing [the plaintiffs'] services, the freeze is appropriate and may remain in place pending final disposition of this case."). Without an asset seizure in place, Defendants are highly likely to simply disappear, leaving Plaintiff and this Court powerless to redress their unlawful acts, and in such cases, numerous courts in this circuit have held that an asset seizure is warranted. Shuxin Decl. at ¶ 12.

### A. Preventing the Fraudulent Transfer of Assets Is Appropriate

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendant's profits from sales of Infringing Products is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in China, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's Complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Plaintiff has shown a strong likelihood of

succeeding on the merits of its design patent infringement claim, so according to 35 U.S.C. § 289, Plaintiff is entitled to recover "the extent of [Defendants'] total profit." Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve relief sought by Plaintiff.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano, de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.*

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, an asset restraint is proper.

### B. Plaintiff is Entitled to Expedited Discovery

In addition, Plaintiff seeks expedited discovery to discover which financial systems and payment accounts Defendants use in their operations. The purpose is to identify any aDitional financial accounts used by Defendants in order to freeze any assets therein to halt Defendants'

counterfeiting activities. "Federal Rule of Civil Procedure 26(d) explains that parties may generally serve discovery only after a Rule 26(f) conference, 'except ... when authorized by ... court order.' To determine whether to authorize expedited discovery in a particular case, courts generally apply a "good cause" standard." *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n*, No. 13 C 2167, 2013 U.S. Dist. LEXIS 47248, at \*28 (N.D. Ill. Mar. 27, 2013), citing Fed. R. Civ. P. 26(b)(1) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."). In this case, much like as was the case in *Deckers*, "there is good cause to allow for expedited discovery." *Id.* at \*28-29. "Because the Defendants in this case are located overseas and have gone to great lengths to conceal their identities and avoid detection, it is likely that this Court's restraining order would be of little value if the Plaintiff is unable to discover the Defendants' bank accounts and serve the financial institutions maintaining those accounts." *Id.* In light of this, Plaintiff respectfully requests this Court grant its Motion allowing Plaintiff to conduct expedited discovery related to the financial accounts and payment systems used by Defendants in conjunction with the sale of the infringing products. This discovery is essential to preventing further harm to Plaintiff and is narrowly tailored to ensure such. Plaintiff's requested asset restraint would be entirely without purpose without the ability to discover those very same accounts. As such, Plaintiff respectfully requests that it be allowed to conduct limited expedited discovery related to Defendants financial accounts, sales, and profits related to the infringing products.

### C. Service of Process by Email is Warranted in this Case

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff also requests that the Court enter an order permitting it to serve the summons, Complaint, proposed temporary restraining order, and notice of any hearing the Court may schedule on Defendants by email.

First, service of process by email is warranted for Defendants listed on Schedule A, given that Defendants are located in China and have no apparent presence in the United States. Nevertheless, United States District Courts, including in this District, have routinely permitted alternative service of process notwithstanding the applicability of the Hague Convention. *See e.g., In re Potash Antitrust Litig.,* 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ("plaintiffs are not required to first attempt service through the Hague Convention."); *see also In re LDK Solar Securities Litigation*, No. C 07-05182 WHA, 2008 U.S. Dist. LEXIS 90702, at *4 (N.D. Cal. June 12, 2008) (authorizing alternative means of service on Chinese defendants without first attempting "potentially fruitless" service through the Hague Convention's Chinese Central Authority).

More importantly, the process of serving Defendants with the relevant documents by international mail (and through the Hague Convention) would likely take a minimum of several months. If the Court grants Plaintiffs' request for a temporary restraining order, the order would only remain in effect for a maximum of 14 days, and the hearing on the preliminary injunction must occur "at the earliest possible time" prior to the expiration of the temporary restraining order. Fed. R. Civ. P. 65(b) ("The order expires at the time after entry– not to exceed 14 days–that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension.").

Second, service of process by email for Defendants is appropriate and necessary because Defendants, on information and belief: (1) rely primarily on electronic communications to communicate with its customers, demonstrating the reliability of this method of communication and (2) Plaintiffs are unable to determine the exact physical whereabouts or identities of Defendants. *See, e.g., Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n,*

15

*No*. 13 C 9807, 2013 U.S. Dist. LEXIS 47248, at \*27 (N.D. Ill. Mar. 27, 2013) (finding service by email and electronic publication appropriate under similar circumstances). As such, Plaintiffs respectfully request this Court's permission to serve Defendants via email. Plaintiff expects to obtain the email addresses from Amazon.com with the discovery requested above.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). The Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." Id. at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. Id.

Similarly, a number of Courts, including the Northern District of Illinois, have held that alternate forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." Id. at 1018; *see also, MacLean-Fogg Co. v. Ningbo Fastlink Equip*. Co., Ltd., No. 1:08-cv-02593, 2008 WL 5100414, \*2 (N.D. Ill. Dec. 1, 2008) (holding e-mail and facsimile service appropriate); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (quoting Rio, 284 F.3d at 1018) (allowing e-mail service); *see also Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv- 01771-PLF-AK, 2008 WL 250584, \*1-2, (D.D.C. Jan. 30, 2008) (citing *Rio*, 284 F.3d at 1017- 1018; other citations omitted) (holding that "in certain circumstances ... service of process via electronic mail ... is appropriate and may be authorized by the Court under Rule 4(f)(3) of the Federal Rules of Civil Procedure"). Plaintiff submits that allowing service solely by e-mail and/or electronic

publication in the present case is appropriate and comports with constitutional notions of due process, particularly given the decision by the registrants of the Defendants to conduct their Internet-based activities anonymously.

### D. A Bond Should Secure the Injunctive Relief

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Plaintiff's evidence of design patent infringement, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than ten thousand U.S. dollars ($10,000.00). *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished) ($10,000 bond).

## V.    CONCLUSION

Defendants' operations are irreparably harming Plaintiff's business, its well-known brand, and consumers. Without entry of the requested relief, Defendants' infringement of the D'080 Patent in connection with the making, using, offering to sell, selling, or importing of the Infringing Products will continue to irreparably harm Plaintiff.  Therefore, entry of an *ex parte* order is necessary.  In view of the foregoing, Plaintiff respectfully requests that this Court enter a Sealed Temporary Restraining Order in the form submitted herewith.


Date: January 30, 2024                                  Respectfully submitted,

                                                         /s/Pete Wolfgram
                                                         Stratum Law LLC
                                                         2424 E. York St.  Ste. 223
                                                         Philadelphia, PA 19125